## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Dawn E. Guba, et. al., | : | Case No. 3:13 CV 592 |
| Plaintiff, | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| Huron County, et al., | : | |
| Defendants. | : | |

### I. Introduction

Plaintiffs Dawn E. Guba ("Plaintiff Guba") and Shawn Ward ("Plaintiff Ward") seek monetary damages resulting from the alleged improper conduct of Defendants Huron County, Huron County Department of Job and Family Services ("Huron DJFS"), Huron County Child Support Enforcement Agency ("Huron CSEA"), Jill Nolan ("Defendant Nolan"), Lenora Minor ("Defendant Minor"), and Heather Carman ("Defendant Carman") (Docket No. 13). On May 2, 2013, the parties consented to the jurisdiction of the undersigned Magistrate to adjudicate all further proceedings in this matter and enter judgment pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73 (Docket No. 9). Pending is Defendants' Motion to Dismiss, filed on June 7, 2013 (Docket No. 14), Plaintiffs' Opposition, filed on July 3, 2013 (Docket No. 20), and Defendants' Reply, filed on July 17, 2013 (Docket No. 21). For the reasons that follow, Defendants' Motion to Dismiss is granted in its entirety.

## II. Parties

As outlined in the First Amended Complaint, the parties to this action are as follows. Plaintiffs Guba and Ward are the divorced biological parents of two minor children now seeking to enforce a previously established child support order. Defendant Huron County is a unit of local government established and organized under the laws of the State of Ohio. At all times relevant to this matter, Huron County employed Child Support Enforcement personnel. Huron DJFS is the public body responsible for administering child support services for residents of Huron County, Ohio. Huron CSEA is responsible for administering, establishing, and executing all child support systems in Huron County, Ohio, including the collection and disbursement of child support. At all times relevant to the Amended Complaint, Defendants Nolan, Minor, and Carman served as the Director, Administrator, and legal advisor, respectively, to Huron DJFS. All employee Defendants are being sued as individuals as well as in their respective official capacities (Docket No. 13).

## III. Factual Background

This case has a rather lengthy history in the Huron County Court of Common Pleas ("Huron County Court"), both factually and procedurally. Plaintiffs Guba and Ward were married on July 1, 1996, in the City of Norwalk, County of Huron, State of Ohio (Docket No. 13, ¶ 17). Six years later, in 2002, Plaintiffs filed for divorce in Ingham County, Michigan (Docket No. 13, ¶ 18). At that time, the parties mutually entered into child support orders with the Ingham County Circuit Court (Docket No. 13, ¶ 19). In 2006, Plaintiff Guba returned to Ohio (Docket No. 13, ¶ 20). Sometime thereafter, Plaintiffs Guba and Ward attempted to transfer and register the Ingham County child support order in Huron County, Ohio (Docket No. 13, ¶ 21).

On May 2, 2006, the Huron County Court entered an order directing that all child support obligations between Plaintiffs Guba and Ward be transferred to Huron County for collection, distribution, and enforcement (Docket No. 13, ¶¶ 23-24). On October 16, 2006, due to a recent change in his employment status, Plaintiff Ward requested and was granted a downward modification of his child support obligation as originally established in the May 2, 2006, order (Docket No. 20, p. 8 of 28).

It appears from the facts presented that child support collection and disbursement between Plaintiffs thereafter resumed and continued without issue until 2008 (Docket No. 13). At some point in 2008, it was discovered that Plaintiffs' May 2, 2006, order had been improperly filed (Docket No. 13, ¶ 28). In an effort to correct this error, Defendant Carman filed a Petition for Registration of Modification and Continuing Exclusive Jurisdiction of Foreign Support Order in the Huron County Court on October 22, 2008 (Docket No. 20, Attachment 6, p. 2 of 3). Three weeks later, on November 18, 2008, Defendant Carman filed a Motion to Vacate the May 2006 child support order (Docket No. 13, ¶ 29). The next day, November 19, 2008, Defendant Carman filed a Motion to Modify a Registered Foreign Support Order (Docket No. 20, Attachment 6, p. 2 of 3). These motions were denied and dismissed by the Huron County Court on May 7, 2009 (Docket No. 20, Attachment 6).

Defendant Carman again attempted to register Plaintiffs' foreign child support order via a Motion to Modify filed on June 10, 2009 (Docket No. 20, Attachment 7). The Huron County Court dismissed this motion without prejudice on September 28, 2009, citing a failure to comply

3

with R.C. § 3115.48(A)(2)[1] (Docket No. 20, Attachment 8). Plaintiffs allege that all attempts made by Defendant Carman to register and/or modify the 2006 child support order were done without notice to either Plaintiff (Docket No. 13, ¶¶ 40, 46). Furthermore, Plaintiffs allege that all child support payments to Plaintiff Guba ceased some time in 2009, despite the fact that Plaintiff Ward continued to pay into the Huron CSEA account (Docket No. 13, ¶ 50).[2]

On March 23, 2012, at the request of Huron DJFS and CSEA, Plaintiffs Guba and Ward signed a Waiver of Service of Petition for Registration of Foreign Support Order (Docket No. 20, Attachment 11). Through this order, Plaintiffs agreed to voluntarily and knowingly waive service of process for a Petition for Registration, Controlling Order and Continuing Exclusive Jurisdiction (Docket No. 20, Attachment 11, p. 2 of 5). Plaintiffs also voluntarily and knowingly agreed to waive any and all errors as a result of the improperly filed May 2, 2006, child support order (Docket No. 20, Attachment 11, p. 3 of 5). In conjunction with this waiver, on April 5, 2012, Plaintiffs each signed an affidavit which read, in part:

> I understand that by signing this affidavit, I am hereby consenting to Huron County, Ohio registering the child support order for enforcement and modification purposes, registering the order to be a controlling order of this state and giving this state continuing, exclusive jurisdiction over the child support order and completing the waiver of arrears process of my child support case.

(Docket No. 20, Attachments 9 and 10).

---

[1] R.C. § 3115.48(A)(2) states: The child, or a party who is an individual, is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction that has not enacted a law or established procedures substantially similar to the procedures under sections 3115.01 to 3115.09 of the Revised Code, the consent otherwise required of an individual residing in this state is not required for the tribunal to assume jurisdiction to modify the child support order.

[2] At some point, it appears that Plaintiff Ward became unable to submit his payments to Huron CSEA for distribution.

4

As a result of the waiver and affidavit, Defendant Carman again filed a petition to register Plaintiffs' foreign support order on April 19, 2012 (Docket No. 13, ¶ 57). This petition was denied on June 4, 2012, for failure to comply with R.C. § 3115.39(A)(2)[3] (Docket No. 20, Attachment 12). Defendant Carman was given thirty days to correct the error (Docket No. 20, Attachment 12). On July 30, 2012, the Huron County Court dismissed the petition (Docket No. 20, Attachment 17, p. 3 of 4).

On August 20, 2012, Huron CSEA sent notice to Ingham County that the Ohio courts had dismissed all actions and closed Plaintiffs' child support case and requested that Ingham County resume enforcement of Plaintiffs' case (Docket No. 20, Attachment 13). On August 23, 2012, the Ingham County Friend of Court notified Huron CSEA that it had closed Plaintiffs' child support case in 2007 (Docket No. 20, Attachment 14). On February 11, 2013, Plaintiff Guba requested a hearing before the Ohio Department of Job and Family Services ("ODJFS") (Docket No. 20, Attachment 16). During this hearing, Huron CSEA agreed that, within the next thirty days, it would obtain a copy of Plaintiffs' original child support order from Ingham County and file a Foreign Support Order (Docket No. 20, Attachment 16). On June 4, 2013, Defendant Carman did indeed attempt to register Plaintiffs' foreign support order for enforcement, modification, and continuing exclusive jurisdiction in the Huron County Court (Docket No. 20, Attachment 17). As of the date of this opinion, Defendant Carman's motion is still pending.

### IV. Procedural History

---

[3] R.C. § 3115.39(A)(2) states: A support order or income withholding order of another state may be registered in this state by sending all of the following documents and information to the appropriate tribunal of this state: (2) Two copies, including one certified copy, of all orders to be registered, including modification of an order.

On March 19, 2013, Plaintiffs Guba and Ward filed a Complaint against all Defendants in the United States District Court, Northern District of Ohio, Western Division (Docket No. 1). On May 20, 2013, Plaintiffs filed an updated Amended Complaint (Docket No. 13). In this Amended Complaint, Plaintiffs allege multiple violations, both federal and state, against all Defendants, including: (1) violations of 42 U.S.C. § 1983 for deprivation of constitutional rights, failure to train, punitive damages, and an unconstitutional taking; (2) violation of the Fourteenth Amendment's right to Due Process; (3) negligence; (4) conversion; (5) equitable restitution; (6) breach of fiduciary duty; and (7) intentional infliction of emotional distress (Docket No. 13). On June 7, 2013, Defendants filed a Motion to Dismiss seeking dismissal of all claims, which is currently pending before this Court (Docket No. 14). Plaintiffs filed their Opposition on July 3, 2013 (Docket No. 20). Defendants submitted a Reply on July 17, 2013 (Docket No. 21).

### V. Motion to Dismiss Standard

Dismissal under FED. R. CIV. P. 12(b)(6) is proper if a complaint fails to state a claim upon which relief may be granted. To survive a motion to dismiss, a complaint must provide fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must also set forth sufficient factual allegations suggesting that a plaintiff is entitled to relief. *Id*. This requires "more than labels and conclusions." *Id*. Mere "formulaic recitation of the elements of a cause of action will not do." *Id.*

A court "must construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine when the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508

6

F.3d 327, 336 (6th Cir. 2007). A court "need not accept as true legal conclusions or unwarranted

factual inferences." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir.

2007). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim

for relief. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

## VI. Discussion

In their Motion to Dismiss, Defendants argue: (1) Plaintiffs' claims are barred by the

applicable statute of limitations; (2) they are entitled to both qualified immunity and immunity

under Ohio state law; (3) Plaintiffs do not have an individualized right to file suit under Title IV-

D in an action under 42 U.S.C. § 1983; (4) Plaintiffs' claims are barred by the Rooker-Feldman

Doctrine; and (5) Plaintiffs' claims fail to state a claim upon which relief can be granted (Docket

No. 14). Upon review of the pleadings, this Court finds that Plaintiffs' claims are indeed barred

by the applicable statute of limitations. In the alternative, Defendants are entitled to immunity for

all claims.

## A.    Statute of Limitations

Before reaching the merits of this case, the Court must first determine whether Plaintiffs'

claims are timely filed. According to Defendants, Plaintiffs' claims are time-barred under R.C. §

2744, which allows a plaintiff only two years from the date a cause of action accrues to file suit

against any political subdivision. Defendants argue that all of Plaintiffs' current claims stem

from the improper filing of the May 2, 2006, child support order, which was filed in the Huron

County Court under case number DRG 2006 0278 (Docket No. 14, pp. 4-5 of 22). Therefore, by

Defendants' calculation, the time for Plaintiffs to file suit in this Court began to run the day the

Huron County Court entered its last order in case number DRG 2006 0278: September 28, 2009

(Docket No. 14, pp. 4-5 of 22). Plaintiffs disagree, alleging that the two-year statute of limitations has not yet begin to run for purposes of Plaintiffs' claims now before this Court (Docket No. 20, pp. 16-18 of 28). According to Plaintiffs, any statute of limitations discussion should proceed using the "continuing violations doctrine," given the fact that Plaintiffs are still not receiving child support services through Huron CSEA (Docket No. 20, pp. 16-18 of 28). The Magistrate disagrees.

> Under R.C. § 2744.04,
>
> An action against a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, whether brought as an original action, cross-claim, counterclaim, third-party claim, or claim for subrogation, shall be brought *within two years* after the cause of action accrues, or within any applicable shorter period of time for bringing the action provided by the Revised Code.

(emphasis added). Generally, "a cause of action accrues for limitations purposes at the time the wrongful act is committed." *Janosek v. City of Cleveland*, 2012 U.S. Dist. LEXIS 105523 (N.D. Ohio 2012) (*citing O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (Ohio 1983)).

Here, the "wrongful act" occurred the very first month Plaintiff Ward could not submit and Plaintiff Guba did not receive a child support payment through Huron CSEA, which Plaintiffs admit occurred some time in 2009 (Docket No. 13, ¶ 50). While it stands to reason that this occurred on September 28, 2009, when the Huron County Court dismissed all matters relating to case number DRG 2006 0278, such specificity is impossible to determine from the pleadings alone. However, based on Plaintiffs' admission that child support collection and distribution ceased some time in 2009, this Court is able to determine that the statute of limitations began to run, at the very latest, on December 31, 2009. Regardless of which date is used, it is clear that Plaintiffs' current suit should have been filed in this Court no later than some

8

time in 2011. Plaintiffs failed to file a claim until March 19, 2013, some fifteen months after this deadline (Docket No. 1).

Furthermore, this Court also takes note of Plaintiffs' admission that, after the September 2009 order was issued, they "continuously called [Defendants] to inquire as to the status of the child support order" (Docket No. 13, ¶ 46). This suggests further knowledge by Plaintiffs of an issue with the May 2006 child support order as early as 2009. Plaintiffs offer no explanation for their failure to abide by R.C. § 2744.04 and file their claim within the requisite time period.

Plaintiffs also argue in their Opposition that the two-year statute of limitations does not apply to violations of the Constitution or statutes of the United States (Docket No. 20, pp. 16-18 of 28). According to Plaintiffs, since their claims involve a violation of civil rights, R.C. § 2744.04 does not apply (Docket No. 20, p. 18 of 28). Plaintiffs' argument is without merit for two reasons.

First, not all of Plaintiffs' claims allege a violation of constitutional rights. Specifically, counts six through ten allege violations of state law (Docket No. 13). These claims are clearly susceptible to the limitations stated in R.C. § 2744.04. Second, the Sixth Circuit has long followed the approach set forth by the United States Supreme Court when analyzing the relationship between claims brought under federal law and a state's statute of limitation. According to the Circuit:

> The Supreme Court has held that § 1983 claims are best characterized as tort actions for recovery of damages for personal injury and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought. If a state has more than one statute of limitations for personal injuries, the state's residual or general statute of limitations governing personal injury actions is applied to all § 1983 actions brought in that state. This Court has held that a two-year statute of limitations applies to § 1983 claims in Ohio.

9

On the other hand, as the Supreme Court recently made clear, federal law determines when the statute of limitations for a civil rights action begins to run. Under those principles, it is the standard rule that accrual occurs when the plaintiff has complete and present cause of action. This occurs when the plaintiff can file suit and obtain relief.

This Court has previously stated that under federal law, as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis for his or her injury has occurred. Stated differently, in determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights. We must therefore look at when the harm in question occurred, guided by the principle that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.

*Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (internal citations omitted). A defendant bears the burden of demonstrating that the statutory period has run prior to a plaintiff filing his or her claim. *Id*. Again, Plaintiffs' cause of action accrued the very first month Plaintiff Ward could not make and Plaintiff Guba did not receive a child support payment. At the very latest, given Plaintiffs' admission, this occurred on December 31, 2009. Plaintiffs' failure to file a claim in this Court until March 2013 renders Plaintiffs' federal claims time-barred.

Finally, a note regarding Plaintiffs' "continuing violations" theory. Plaintiffs rely on a 1992 case from the Sixth Circuit, *Haithcock v. Frank*, 958 F.3d 671 (6th Cir. 1992), which explains the doctrine as follows:

The continuing violation theory, first articulated by the Supreme Court . . . held that discriminatory incidents which occur beyond the limitations period are actionable where such a plaintiff . . . challenges not just one incident of [unlawful] conduct . . . but an unlawful practice that continues into the limitations period, [in such cases] the complaint is timely when it is filed within [thirty] days of the last asserted occurrence of that practice. Thus, where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period.

This circuit has held that we must view continuous violations as falling into two categories of narrowly limited exceptions to the usual rule that statutes of limitations

10

are triggered at the time the alleged discriminatory act occurred.

> The first category of continuing violations arise where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates between similarly situated groups . . . The second category of continuing violations arise where there has occurred a longstanding and demonstrable policy of discrimination. Unrelated incidents of discrimination will not suffice to invoke this exception; rather there must be a continuing over-arching policy of discrimination.

958 F.2d at 677-78 (emphasis in original) (internal citations omitted). Plaintiffs also assert that this doctrine has been applied in the civil rights context. *See Belcher v. Ohio Dep't of Human Servs.*, 48 F.Supp.2d 729, 736 (S.D. Ohio 1999) (applying the continuing violations doctrine to a case of alleged racial discrimination).

Plaintiffs offer little support for their position beyond sources of what is now questionable legal authority. They allege that they have been subject to a continuing violation in two ways: (1) Plaintiff Ward's inability to pay into the child support system; and (2) Plaintiff Guba's failure to receive child support payments (Docket No. 20, p. 17 of 28). Plaintiffs do *not* allege, as the plain language of the doctrine seemingly requires, any *discriminatory* activity or a demonstrable *policy* of discrimination (Docket No. 20, pp. 16-18 of 28). Even if this doctrine were applicable to the case at hand, as will be discussed more fully in Section (B)(1)(a), *infra*, Plaintiffs cannot maintain *any* claim for a violation of their civil rights, as the violation they allege, failure to collect and distribute child support, is not, in fact, tied to a right protected by the Constitution or any statute of the United States.

Additionally, the Court takes note of the fact that Plaintiffs' cited authority is more than ten years old (Docket No. 20, p. 17 of 28). This is likely because more recent Sixth Circuit precedent has held that the continuing violations doctrine

11

> applies only to violations that are part of 'a longstanding and demonstrable policy' of illegality. *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003). The policy must extend beyond the plaintiff who asserts the doctrine; to establish a continuing violation, the plaintiff 'must demonstrate something more than the existence of discriminatory treatment in his case.' *Id*. (*quoting Haithcock*, 958 F.2d at 679). Rather, '[t]he preponderance of evidence must establish that some form of intentional discrimination against [a] *class* of which plaintiff was a member was the company's standard operating procedure.' *Sharpe*, 319 F.3d at 269 (*quoting EEOC v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 838 (6th Cir. 1988)) (emphasis added).

*Abuobeid v. Hargus*, 2010 U.S. Dist. LEXIS 43093, *14-15 (6th Cir. 2010 ) (*quoting Cherry v. City of Bowling Green, Ky.*, 347 F.App'x 214, 216-17 (6th Cir. 2009)). In contrast to what is required to invoke this doctrine, Plaintiffs have only alleged injury that is personal to them, having nothing to do with their membership in any particular class or discriminatory treatment based on such a membership. Plaintiffs' continuing violations argument is without merit.

Given the statutory requirements of R.C. § 2744.04 and the relationship between that provision and claims filed under 42 U.S.C. § 1983, this Court finds that Plaintiffs failed to file all present claims within the required two-year period. As such, all claims are now time-barred and are dismissed.

**B.      Immunity**

In the alternative, even if Plaintiffs' claims were not time-barred, they must fail under the doctrines of both qualified and statutory immunity. The type of immunity awarded depends on the type of claim alleged. Qualified immunity applies to only those claims asserted under federal law. Statutory immunity applies to claims filed under Ohio state law. Given Plaintiffs' mixture of federal and state claims, each type of immunity will be analyzed in turn.

**1.      Qualified Immunity**

Plaintiffs seek to hold Defendants liable for federal civil rights violations, including: (1)

12

deprivation of constitutional rights with regard to the collection, disbursement, and enforcement of child support; (2) deprivation of Plaintiffs' right to Due Process under the Fourteenth Amendment; and (3) a failure to train and supervise employees (Docket No. 13). In their defense, Defendants assert qualified immunity (Docket No. 14, pp. 5-6 of 22).

This Court has time and again iterated the standard for qualified immunity, which can be summarized as follows:

> Qualified immunity protects government officials performing discretionary functions from civil liability under federal laws unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Like absolute immunity, qualified immunity 'is an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial.' *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Id.*

> Qualified immunity provides a broad range of protection, as it protects 'all but the plainly incompetent or those who knowingly violate the law.' *Malley v. Briggs*, 475 U.S. 335, 341 (1986). 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

*Turner v. City of Toledo*, 2009 U.S. Dist. LEXIS 102473, *3-4 (N.D. Ohio 2009).

Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to satisfy two basic questions: "(1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury?" *May v. Hamilton County*, 2011 U.S. Dist. LEXIS 136275, *9 (S.D. Ohio 2011) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The court may, in its discretion, address these questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236-37

13

(2009). A plaintiff bears the burden of showing that a right is "clearly established." *May*, 2011 U.S. Dist. LEXIS 136275 at *10 (*citing Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009)). A defendant bears the burden of showing that the "challenged actions were objectively reasonable in light of the law existing at the time." *Id*.

### a.    Clearly Established Rights

### 1.    Failure to Provide Child Support Services (Counts I, II, III, V)

Although set forth as four individual claims for violations under 42 U.S.C. § 1983, Plaintiffs' basic complaint against all Defendants is Defendants' denial of and interference with Plaintiffs' right to child support services (Docket No. 13). In its 1997 case *Blessing v. Freestone*, 520 U.S. 329 (1997), the United States Supreme Court stated its position that, "[i]n order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." 520 U.S. at 340 (emphasis in original). Using this ruling as a guideline, the Sixth Circuit has set forth the following requirements necessary to determine whether a statutory provision gives rise to a federal right:

> Under 42 U.S.C. § 1983, an individual may bring a private right of action against anyone, who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes. When determining whether a statutory provision gives rise to a federal right, we must ask (1) whether the plaintiff is an intended beneficiary of the statute, (2) whether the plaintiff's asserted interests are so vague and amorphous as to be beyond the competency of the judiciary to enforce them, and (3) whether the statute imposes a binding obligation on the State.

*Clark v. Portage County*, 281 F.3d 602, 603 (6th Cir. 2002). The Sixth Circuit has also set forth a determination as to whether Title IV-D of the Social Security Act ("Title IV-D"), which governs child support collection and enforcement, provides a federally enforceable *right* under 42 U.S.C. § 1983:

In *Blessing v. Freestone*, the Supreme Court considered the extent to which Title IV-D gives rise to an individual right of enforcement. In *Blessing*, the Plaintiffs alleged that the Arizona child support enforcement agency failed to take adequate steps to obtain child support payments from non-custodial fathers. Their specific allegation complained not that the agency violated a specific right, but that it did not substantially comply with Title IV-D. Finding that the Title IV-D substantial compliance requirements were not intended to benefit individual children and custodial parents, the Supreme Court held that the substantial compliance provision did not confer a federal right. The Court, however, did not foreclose the possibility that some provisions of Title IV-D give rise to individual rights, but emphasized that plaintiffs must be able to identify with particularity the rights they claimed.

*Id*. at 603-04.

In *Clark*, much as is the case here, a plaintiff mother brought a class action lawsuit against the county and agency officials under 42 U.S.C. § 1983 alleging failure by the defendants to collect her child support payments. *Id*. at 603. The Court noted that "as the Supreme Court made clear in *Blessing*, the simple lack of effectiveness by a state in enforcing support obligations does not alone give rise to an individual right." *Id*. at 605. The Court found that the plaintiff did not have any individual right under Title IV-D by which to maintain a claim under 42 U.S.C. § 1983. *Id*.

Similarly, Plaintiffs here do not now have a "clearly established right" through which they can maintain their claims for failure to provide child support services under 42 U.S.C. § 1983. Without this "clearly established right," Defendants are entitled to qualified immunity and Plaintiffs' claims relative to the provision of child support services (specifically Counts I, II, III, and V) are dismissed.[4]

---

[4] It is important to note here that, without a clearly established right at the time of the alleged injury, it is unnecessary to determine whether Defendants violated that right.

## 2.    Substantive Due Process (Count IV)

In Count IV of their Amended Complaint, Plaintiffs allege a general due process violation (Docket No. 13, ¶¶ 86-91). The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." While not explicitly noted in the Amendment itself, courts have interpreted this constitutional provision as bestowing both *procedural* and *substantive* due process rights. *See Braun v. City of Ann Arbor Charter Twp.*, 519 F.3d 564, 572-74 (6th Cir. 2008). Violations of substantive due process are divided into two categories: (1) deprivation of a particular constitutional guarantee; and (2) actions that "government officials may not take no matter what procedural protections accompany them," commonly known as actions that "shock the conscience." *Braley v. City of Pontiac*, 906 F.2d 220, 224 (6th Cir. 1990).

Here, Plaintiffs allege that "the outright denial of child support services employed by all defendants . . . violates the concept of fundamental fairness and instead, place[s] the behavior of the governmental agency individuals firmly into the realm of unconstitutionally outrageous governmental conduct" (Docket No. 13, ¶ 89). It appears from the pleadings that Plaintiffs allege a violation of their right to the collection, distribution, and enforcement of child support and/or child support services (Docket No. 13). There is no such right stated in the Constitution or in the statutes of the United States.[5]

Furthermore, although it seems to be taking an inordinate amount of time to simply correct a child order, Plaintiffs have not pled any facts that suggest that Defendants' actions are

---

[5] Again, without a clearly established right at the time of the alleged injury, it is unnecessary to determine whether Defendants violated that right.

16

so egregious as to "shock the conscience." In fact, by Plaintiffs' own account, Defendants have been consistently, although unsuccessfully, trying to rectify the problem. Therefore, Defendants are entitled to qualified immunity on Plaintiffs' substantive due process claim. As such, the claim is dismissed.

### 2. Immunity under R.C. § 2744

Plaintiffs also allege five state law claims against all Defendants: (1) negligence; (2) conversion; (3) equitable restitution; (4) breach of fiduciary duty; and (5) intentional infliction of emotional distress (Docket No. 13). In their Motion to Dismiss, Defendants argue that they are entitled to statutory immunity under R.C. § 2744.03 (Docket No. 14, pp. 7-12 of 22). Plaintiffs disagree (Docket No. 20, pp. 21-23 of 28).

At the outset, it is important to understand that a statutory immunity analysis in this case is a two-fold inquiry. In what must be two separate analyses, this Court must first determine whether the Defendant political subdivisions, namely Huron County, Huron DJFS, and Huron CSEA, have immunity, and then subsequently determine if the individual employees of these political subdivisions, Defendants Nolan, Minor, and Carman, also have such immunity.

### a. Political Subdivision Immunity Under R.C. § 2744.03(A)

Ohio Revised Code § 2744, commonly known as the Political Subdivision Tort Liability Act, "sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. "First, R.C. 2744.02(A) sets forth the general rule of immunity, that political subdivisions are not liable in damages for the personal injuries or death of a person." *Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (Ohio 1998). Specifically, under R.C. § 2744.02(A)(1),

> the functions of political subdivisions are . . . classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a

17

political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

To determine whether the collection and distribution of child support is a "governmental or proprietary function," this Court looks to R.C. § 3125.11, which states:

a child support enforcement agency for a county is the local Title IV-D agency for the county and shall operate a program for support enforcement in the county that complies with Title IV-D of the Social Security Act, as amended, any rules adopted pursuant to that title, and state law. Each child support enforcement agency shall be . . . responsible in the county it serves for the enforcement of support orders and shall perform all administrative duties related to the enforcement of any support order.

Therefore, it stands without question that administering child support is a function of a political subdivision. As such, Defendant political subdivisions are presumptively entitled to immunity.

Having established this immunity, it is necessary to determine whether any of the *exceptions* to immunity, listed in R.C. § 2744.02(B), apply. *See Cater*, 83 Ohio St.3d at 28. These exceptions include: (1) injuries caused by the negligent operation of a motor vehicle; (2) injuries caused by the negligent performance of a proprietary function; (3) injuries caused by the failure to keep roads, highways and streets open, in repair, and free from nuisance; (4) injuries caused by negligence on the grounds of a building used for governmental purposes; or (5) injuries for which liability is expressly imposed by the Revised Code. R.C. § 2744.02(B)(1)-(5).

Based on the facts at hand, the only potentially applicable exception to immunity is (b), the negligent performance of a proprietary function. Plaintiffs allege that the Defendant political subdivisions are liable for the gross mismanagement by their employees of Plaintiffs' child support file (Docket No. 13, ¶¶ 96-106). As such, it is necessary to determine whether any of the *defenses* to liability listed under R.C. § 2744.03(A) apply.

18

In relevant part, a political subdivision may still remain immune from civil liability if:

(1) the employee involved was engaged in the performance of a judicial, quasi-judicial, prosecutorial, legislative, or quasi-legislative function

(2) the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee

(3) if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee

R.C. § 2744.03(A)(1)-(3).

Here, Defendant political subdivisions have immunity given their performance of both quasi-judicial and prosecutorial functions. Under R.C. §§ 3115.39(A) and 3115.48(A), only a tribunal of this state may register or modify, respectively, a child support order. As Plaintiffs admit both in their Amended Complaint and Opposition, Defendant Carman made numerous attempts, on behalf of Huron CSEA, to both register and modify Plaintiffs' improperly filed May 2, 2006, child support order (Docket Nos. 13, 20). To do so, she necessarily had to appear before a tribunal of the State of Ohio, namely the Huron County Court. As such, Defendant Carman was engaged in the performance of a prosecutorial function.

Additionally, the Defendant political subdivisions retain immunity under R.C. §§ 2744.03(A)(2) and (3). Defendant Carman served as the legal advisor to Huron CSEA (Docket No. 13, ¶ 12). Her actions, specifically filing motions to register and modify Plaintiffs' child support order, were necessary and essential to Huron CSEA's exercise of powers and within her

19

discretion as the legal advisor in an effort to correct any errors that had been made.

Therefore, the Court grants Defendant political subdivisions, namely Huron County, Huron DJFS, and Huron CSEA, immunity under R.C. § 2744. As such, all state law claims against these Defendants are dismissed.

### b.      Employee Immunity Under § 2744

Defendants Nolan, Minor, and Carman are being sued both in their official and individual capacities (Docket No. 13). With regard to employee immunity under state law, the Sixth Circuit has recognized that

> Ohio's immunity statute draws no distinction between suits against an individual government employee in his official as opposed to his personal capacity. An action against an officer in his official capacity is simply another way of pleading an action against the governmental entity itself. If official-capacity claims are nothing more than claims against the county, then it would be appropriate to dismiss the official capacity claims against the employee defendants if such claims have been dismissed against the county.

*Chesher v. Neyer*, 477 F.3d 784, 797 (6th Cir. 2007) (*citing Norwell v. City of Cincinnati*, 133 Ohio App.3d 790 (Ohio Ct. App. 1990)).

As stated above, Plaintiffs' state law claims against all Defendant political subdivisions have been dismissed. Therefore, all that remains is Defendants Nolan, Minor, and Carman's potential *individual* liability for state law claims. Whether a defendant is liable as an individual turns on the availability of statutory immunity as defined in R.C. § 2744.03(A)(6). *See Chesher*, 477 F.3d at 797.

A state employee is immune from liability for all acts done in connection with a governmental or proprietary function unless: (a) the acts or omissions were manifestly outside

20

the scope of employment or official responsibilities; (b) the acts or omissions were made with malicious purpose, in bad faith, or in a wanton reckless manner; or (c) a section of the Ohio Revised Code imposes liability. R.C. § 2744.03(A)(6)(a)-(c). As Plaintiffs have already admitted that Defendants Nolan, Minor, and Carman were acting within the scope of their employment at all times relevant to the Amended Complaint (Docket No. 13, ¶ 97), only exception (b) is potentially relevant to the case at hand.

### 1. Malicious purpose, bad faith, or wanton reckless manner

For purposes of this section, "maliciousness" is defined as "indulging or exercising malice; harboring ill-will or enmity." *Pearl v. City of Wyoming*, 2013 Ohio App.LEXIS 2783, *4 (2013) (internal citations omitted). It can also be defined as "the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Id*. (internal citations omitted). "Bad faith" indicates "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id*. at *4-5. It also includes the "actual intent to mislead or deceive another." *Id*. "Wanton" is conduct that "manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Id*. at *5 (internal citations omitted). Finally, one acts in a "reckless" manner if he "does an act or intentionally fails to do an act which it is his duty to do." *Id*. This individual must know, or have reason to know, facts that would "lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of harm to another, but also that such risk is

21

substantially greater than that which is necessary to make his conduct negligent." *Id*. at *5-6.

Here, construing the facts as set forth in the Amended Complaint as true, Plaintiffs claim that Defendants Nolan, Minor, and Carman: (1) grossly mismanaged Plaintiffs' child support file; (2) wrongfully exercised dominion over Plaintiffs' personal property, namely the funds collected by and through the court for child support; (3) wrongfully took and held money identified as belonging, in good conscience, to Plaintiffs; (4) failed to abide by their affirmative duty to hold in constructive trust all funds collected to be paid pursuant to Plaintiffs' child support order; and (5) as a result of these infractions, engaged in conduct that was intentional, extreme, outrageous, and of such a character as not to be tolerated by a civilized society (Docket No. 13, ¶¶ 96-133). These claims focus on Defendant Carman's multiple attempts to register and modify Plaintiffs' foreign support order (Docket No. 13).

While Plaintiffs undoubtedly take issue with the outcome and current status of the state court proceedings, their claims do not rise to the level necessary to remove immunity. No where in the Amended Complaint do Plaintiffs claim that Defendants' behavior is done with malice, in bad faith, or in a wanton reckless manner (Docket No. 13). Even assuming Plaintiffs received no prior notification of Defendant Carman's multiple attempts to register and modify the May 2, 2006, child support order, the facts as presented seem only to indicate Defendant Carman's desire to rectify an ongoing problem using the only method available to her at the time and under the circumstances. Therefore, the Court grants Defendants Nolan, Minor, and Carman's request for immunity under R.C. § 2744.03 for claims filed against them in their individual capacity. As such, all state claims against these Defendants are dismissed.

**C.    Procedural Due Process**

22

Finally, Plaintiffs set forth a procedural due process claim, alleging that they were never made aware of Defendant Carman's multiple attempts to register and/or modify the May 2, 2006, child support order (Docket No. 13, ¶¶ 31, 32, 40, 46). With regard to procedural due process, the Sixth Circuit held that

> To determine whether a due process violation has occurred, the court must first decide whether plaintiffs had a property right that entitled them to procedural protections. Once a property right is established, the process that is due is then determined. The procedural inquiry requires a three-pronged analysis. The court must determine: (1) the private interest that will be affected by the governmental action; (2) the risk of an erroneous deprivation of such interest through the procedure used along with the probable value, if any, of requiring additional or substitute procedures; and (3) the governmental interest involved, including the burdens that the additional or substitute procedures would create.

*Hughlett v. Romer-Sensky*, 497 F.3d 557, 566-67 (6th Cir. 2006). To have a property interest in a particular benefit, one must have a "legitimate claim of entitlement to the benefit." *Id.* at 567 (*quoting Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). This entitlement must be grounded in some statute, rule, or policy. *Hughlett*, 497 F.3d at 567. Here, the alleged procedural due process violation is focused on Plaintiffs' right to notice of registration or modification of a child support order.

Revised Code § 3115.55(B) states that any action brought under R.C. §§ 3115.43 and 3115.44 to register a child support order, any action brought under R.C. § 3115.46 to register an order for modification "shall be governed by the Rules of Civil Procedure." Additionally, under R.C. § 3115.55(C), "[i]n any proceeding in which the plaintiff seeks to invoke the continuing jurisdiction of a responding tribunal of this state in order to modify or enforce a support order, notice of the complaint shall be served in the manner provided for service of process under the Rules of Civil Procedure." In Ohio, Civ. R. 5 governs service. It states, "[e]xcept as otherwise

23

provided in these rules, every order required by its terms to be served . . . shall be served upon each of the parties." Civ. R. 5(A).

Here, Plaintiffs allege they never received notice of any hearing relative to Defendant Carman's attempts to correct the improperly filed May 2, 2006, child support order, nor were they ever made aware of any of the multiple filings in the case (Docket No. 13, ¶¶ 31, 32, 40, 46). Construing these facts as true, it is clear, based on Ohio law, that Plaintiffs had a right to notice but did not receive such notice, thereby satisfying the first requirement of the procedural due process analysis.

However, Plaintiffs are unable to prevail on the second prong of the due process inquiry. Plaintiffs must show that the "risk of an erroneous deprivation of such interest through the procedure used along with the probable value, if any, of requiring additional or substitute procedures." *Hughlett*, 497 F.3d at 566. With regard to this requirement, the United States Supreme Court has stated that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Hughlett*, 497 F.3d at 566 (plaintiffs fail to show that a postdeprivation remedy was inadequate to address their claims concerning child support). Here, as Defendants note, Plaintiffs had a meaningful postdeprivation remedy: Plaintiffs could have appealed any and all orders in case number DRG 2006 0278, including the September 28, 2009, decision, to the state appellate courts. They chose not to do so, despite clearly being dissatisfied with the outcome. As such, Plaintiffs cannot maintain a procedural due process claim. The claim is therefore dismissed.

24

D.      **Rooker-Feldman Doctrine**

Although somewhat now irrelevant, this Court must mention Defendant's argument that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.[6] On its most fundamental level, this doctrine "prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision." *Hall v. Callahan*, 2013 U.S. App. LEXIS 14520, *6 (6th Cir. 2013) (*citing Luber v. Sprague*, 90 F.Appx. 908, 910 (6th Cir. 2004)). "Federal courts' 'authority to review a state court's judgment' is vested 'solely in [the Supreme] Court.'" *Hall*, 2013 U.S. App. LEXIS at *6 (*citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)). "On the other hand, the Rooker-Feldman doctrine does not bar 'a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Id.* at *6-7 (*citing Exxon Mobil Corp.*, 544 U.S. at 293). Originally, courts interpreted this doctrine to mean that federal district courts were prohibited from reviewing constitutional claims which were "inextricably intertwined" with the merits of a state court judgment. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983). In its 2005 decision in *Exxon Mobile*, the United States Supreme Court clarified that the *Rooker-Feldman* doctrine applied only in "limited circumstances." 544 U.S. at 291. Since the *Exxon Mobile* decision, many courts, including the Sixth Circuit, have tightened their scope of this doctrine. *See Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (2010). The *Kovacic* Court explained:

---

[6] The *Rooker-Felman* doctrine derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) which establish the legal principle that federal district courts lack subject matter jurisdiction over suits which are, at least in substance, appeals from state court judgments.

25

> [T]he pertinent inquiry after *Exxon* is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state court judgment: The inquiry [focuses on] the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, *such as a third party's actions*, then the plaintiff asserts an independent claim.

*Id*. (emphasis in original).

Here, Plaintiff alleges that the *source* of their injury is the constitutional violations allegedly perpetrated by Defendant, *not* the dismissal of the foreign support order by the state court (Docket No. 20, p. 26 of 28). Plaintiffs' First Amended Complaint seems to reflect this argument (Docket No. 13). Therefore, since Plaintiffs are not arguing the impropriety of the state court decision regarding their foreign support order and are instead arguing that the policies and procedures of Defendants amount to a constitutional violation, the Magistrate finds that the *Rooker-Feldman* doctrine does not apply. Therefore, Defendants' argument is without merit and is denied. However, given this Court's previous rulings, *supra*, this decision bears little merit on the outcome of Defendants' Motion to Dismiss as a whole.

**VII. CONCLUSION**

For the foregoing reasons, the Magistrate grants Defendants' Motion to Dismiss in its entirety. Plaintiffs' claims against all Defendants are dismissed. **SO ORDERED.**

/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:   December 13, 2013