# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Dawn Guba, et al.,                                      Case No. 3:13CV592

          Plaintiffs

          v.                                      **ORDER**

Huron County, Ohio, et al.,

          Defendants

      This is a procedural-due-process case under 42 U.S.C. § 1983.

      The plaintiffs, Dawn Guba and Shawn Ward, are a divorced couple who obtained a Michigan court order requiring Ward to pay child support. After plaintiffs separately moved to Ohio, Guba turned to the defendant, the Huron County Child Support Enforcement Agency (the Agency or CSEA), for help registering that order in Ohio.

      Although the Agency registered the order for enforcement purposes, it negligently failed to register it for modification purposes, thereby depriving the Huron County Common Pleas Court of jurisdiction to adjust Ward's support obligation. Guba and Ward spent five years trying to get the Agency to fix the snafu, to no avail.

      Finally they brought this § 1983 action, alleging that defendants' failure to register the support order properly deprived Guba of her right to receive child-support payments that Ward had made to the Agency, and deprived Ward of his right to expect that the Agency would remit those payments to Guba.

Pending is defendants' motion for summary judgment. (Doc. 45).

Because there is no evidence in the record that Ward made a payment to the Agency that it did not remit to Guba, a reasonable jury could not find that defendants' misconduct deprived the plaintiffs of their protected property interests. Accordingly, I grant the motion for summary judgment.

## Background

Guba and Ward divorced in Ingham County, Michigan, in 2002.

After Guba moved to Ottawa County, Ohio in 2006, she contacted officials in Huron County, Ohio, where Ward had moved, for help registering the Michigan child-support order. (Doc. 45–11 at 12; Doc. 46–16 at ¶5). After she filled out some paperwork and submitted her tax information, Guba learned that the Agency had registered the Michigan order. (Doc. 45–11 at 13–14; Doc. 14–2 at 1).

From May, 2006 until November, 2008, Guba received child-support payments from Ward via the Agency. (Doc. 13 at ¶¶25–27; Doc. 45–13 at 16–30).[1]

In general, the Agency garnished Ward's wages and remitted his child-support payments to Guba. Between March, 2007 and December, 2007, however, Ward made occasional cash payments toward his support obligation. (Doc. 45–12 at 19–20). He made these payments at the Agency's offices and received a receipt for each payment.[2] (*Id.* at 20).[3]

---

[1] The Huron County Common Pleas Court registered the support order in the case of *Guba v. Ward*, Case No. DR 2006 0278. (Doc. 20–17 at ¶2).

[2] These receipts are not, however, in the record.

[3] Nothing in the record supports plaintiffs' assertion that "no receipts [of cash payments] are kept in the normal course of [the Agency's] business." (Doc. 46 at 15). Plaintiffs rely on the

The Agency's "Payment History Report" for Guba and Ward's child-support case reflects that, in 2006, the Agency collected $862.15 from Ward and remitted that amount to Guba. (Doc. 45–13 at 19). It also reflects that, in 2007, the Agency collected $11,040.05 from Ward and remitted $10,522.76 to Guba.[4] (*Id.* at 25). And it reflects that, in 2008, the Agency collected $4,313.47 from Ward and remitted those funds to Guba. (*Id.* at 26–31).

## A. The Improper Registration

In June, 2008, and at the request of Guba and Ward, the Agency sought a reduction in Ward's support obligation. (Doc. 13 at ¶27; Doc. 46 at 3).[5] One of the Agency's attorneys, Carol M. Gottschling (who is not a party to this case), submitted a proposed modification order to the Huron County Common Pleas Court. (Doc. 45–2 at 1, 4).

The presiding Magistrate, Brad A. Sales, declined to enter the order. In a note he sent to the Agency in September, 2008, Magistrate Sales questioned whether it was "proper to do an admin. review + adjustment on a case where the [foreign support] order has been registered for enforcement

---

deposition testimony of defendant Lenora Minor, the Agency's Program Administrator, but a review of her deposition confirms that she did not testify about the Agency's practices *vis-a-vis* receipts. (Doc. 46–21 at 14). Plaintiffs' assertion is contrary, moreover, not only to Ward's own testimony, but also that of Agency Investigator Stacy Rader. At her deposition, Rader explained that when a party owing child support makes a cash payment, "we collect the money, put it into the system and it prints a receipt and we provide that receipt to the party." (Doc. 46–20 at 45).

[4] The defendants state, without contradiction, that this $517.29 discrepancy represents the administrative costs the Agency incurred in handling plaintiffs' case. (Doc. 45 at 11).  In any event, plaintiffs have not alleged that the Agency failed to disburse to Guba any payment that Ward made in 2007. *Guba v. Huron Cnty.*, 600 F. App'x 374, 377 (6th Cir. 2015) ("From the date of the common pleas court order until 2008, Plaintiffs received child-support services from Huron County and the CSEA without any problems."); (Doc. 13 at ¶¶23–27).

[5] In 2006, the Agency sought, and without incident obtained, an initial reduction in Ward's support obligation. *Guba*, *supra*, 600 F. App'x at 376.

only[.]" (*Id.* at 1). After receiving this note, another Agency attorney, defendant Heather Love Carman, realized the Agency had mistakenly registered the Michigan order for enforcement purposes only.[6] Consequently, it was Carman's understanding that the Huron County court did not have jurisdiction to modify Ward's support obligation.

To resolve this issue, Carman filed, on October 22, 2008, a "Petition for Registration of Modification and Continuing Exclusive Jurisdiction of Foreign Support Order." (Doc. 45–1 at 11; Doc. 45–3 at 1).

Carman then conducted additional legal research, with a focus on O.R.C. § 3115.48.[7]

This research led her to believe that she should have filed a "Motion to Modify" the registered order, rather than a new registration petition. (Doc. 45–1 at 11). Accordingly, she filed, on November 18, 2008, a "Motion to Vacate" the petition she filed on October 22 (Doc. 45–3), and, the next day, a "Motion to Modify" the original order. (Doc. 45–4).[8]

---

[6] The defendants admit that the Agency's failure, in May, 2006, to register the order for enforcement *and* modification purposes was negligent. (Doc. 45 at 19).

[7] Section 3115.48, a provision of the Uniform Interstate Family Support Act that the Ohio General Assembly has since repealed, specifies the conditions under which a court may modify a foreign child-support order once the order "has been registered in [Ohio]." O.R.C. § 3115.48(A).

[8] Plaintiffs' opposition brief contends they were "never made aware of the November 2008 filing" by Carman, but they cite no evidence to support this assertion. (Doc. 46 at 3). At the same time, defendants cite no evidence to support their assertion that Carman "submitted praecipes with her filings" that notified Guba and Ward that she had filed a petition to vacate and a motion to modify. (Doc. 47 at 8). The only evidence in the record on this issue is the Huron County docket, which, as I discuss below, reflects that Ward, but not Guba, received notice of the initial hearing on Carman's November, 2008 filings. (Doc. 47–1 at 2). For that reason, the court rescheduled the hearing, and it is undisputed Guba and Ward received notice, via certified mail, of that hearing date. (*Id.*).

4

Carman's filings asked the court to set "this matter" for a "non-oral hearing" (Doc. 45–3 at 1; Doc. 45–4 at 2), and the court scheduled such a hearing for January 8, 2009. (Doc. 47–1 at 2). The Huron County Common Pleas Court's docket reflects that Ward received notice, via certified mail, of the hearing. (Doc. 47–1 at 2). Although the court also sent notice to Guba, she did not receive it. (*Id.*).

Accordingly, the court reset the hearing for April 16, 2009. (Doc. 45–10 at 125–26; Doc. 47–1 at 2). The court sent notice of the hearing, via certified mail, to Guba and Ward. Ward received this notice on March 20; Guba received it on March 25. (Doc. 47–1 at 2) (docket sheet reflecting return of certified-mail notices signed by Ward and Guba).

A Magistrate held a hearing on April 16 and issued a decision on May 7.[9] (Doc. 45–5 at 1).

On the same day the Magistrate issued his decision, Common Pleas Judge James W. Conway entered an order confirming the Magistrate's decision. (*Id.* at 1–2). Judge Conway dismissed the registration petition and denied the motion to modify.[10] A certificate of service reflects that the court sent copies of this decision to Guba and Ward. (*Id.* at 2).

On June 10, 2009, Carman filed another motion to modify the support order. (Doc. 45–6 at 1; Doc. 47–1 at 3). The Huron County court set this motion for a non-oral hearing on July 16 and sent notice to that effect, via certified mail, to the plaintiffs. Guba received the notice, but Ward did not. (Doc. 47–1 at 3).

---

[9] The text of the Magistrate's decision, if such exists, is not part of the record.

[10] Contrary to plaintiffs' representation (Doc. 46 at 3), Judge Conway's order does not explain why he dismissed the registration petition and denied the motion to modify. (Doc. 45–5 at 1–2).

5

At the hearing, Magistrate Sales determined there were "insufficient materials of evidentiary quality that would enable the Court to make a determination whether the registered order should be modified in accordance with Revised Code 3115.48." (Doc. 45–6 at 1).[11] The court explained:

> the Court presently does not have information relative to income of Petitioner [Guba], income of Respondent [Ward], availability and accessibility of private health insurance coverage for either parent, or any other information that would enable calculation of court-ordered child support pursuant to the guidelines set forth in Revised Code 3119.01 et seq. and the applicable statutory computation worksheet. The Magistrate therefore finds that the matter should be scheduled for oral hearing.
>
> **IT IS HEREBY ORDERED THAT** the Motion to Modify the Registered Foreign Support Order filed 10 June 2008 by the Huron County CSEA in the instant matter shall be scheduled for oral hearing for
>
> **Wednesday, August 26, 2009 at 2:00 p.m.**, or as soon thereafter as the business of the Court permits.

(*Id.*) (all emphases in original).

The court sent copies of its decision, via first-class mail, to Guba and Ward. (*Id.* at 2; Doc. 47–1 at 3). Although Guba and Ward did not deny, at their respective depositions, receiving notice of the August 26 hearing, *infra*, p. 7 & n.14, neither appeared for that hearing. (Doc. 45–7 at 1).[12]

At the August 26 hearing, the Magistrate determined that "the parties hereto have failed to comply with the requirements of Revised Code 3115.48(A)(2) and other applicable

---

[11] This order, which is dated July 28, 2009, reflects that the court had heard the motion on July 23, rather than July 16. (Doc. 45–6 at 1).

[12] Plaintiffs assert, without citation to evidence, that they "were never made aware of the . . . August 2009 filing, as proper notice was given to neither plaintiff." (Doc. 46 at 3). It is unclear what plaintiffs mean by the "August 2009 filing," as there is no evidence in the record suggesting Carman or anyone else filed a pertinent document in August, 2009. As far as the record shows, all that happened that month was the August 26 hearing before Magistrate Sales.

6

law."[13] (Doc. 45–7 at 1). Finding that "the parties should be provided notice prior to any dismissal of the pending action," the Magistrate continued the hearing to September 23, 2009 and ordered that:

> the parties hereto shall demonstrate compliance with Revised Code 3115.48 prior to the next scheduled hearing or shall appear and show cause at the scheduled hearing why the pending motion should not be dismissed.
>
> NOTICE: PARTIES' FAILURE TO APPEAR OR OTHERWISE TO COMPLY WITH THIS ORDER SHALL RESULT IN DISMISSAL OF THE INSTANT MOTION WITHOUT FURTHER NOTICE OR HEARING.

(*Id.* at 1–2) (emphasis in original).

The court sent this order, dated September 8, 2009, to both plaintiffs by regular mail. (*Id.* at 2; Doc. 47–1 at 3). Plaintiffs – neither of whom denied receiving this order – did not appear for the September 23 hearing. (Doc. 45–8 at 1).

At the September 23 hearing, Magistrate Sales reiterated his finding that "the parties hereto have failed to comply with the provisions of Revised Code 3115.48(A)(2) and other applicable law." (*Id.*). After confirming that "the parties hereto have been notified that failure to appear at the instant hearing and failure to address defects would result in dismissal," the Magistrate dismissed the motion to modify "for want of prosecution without prejudice." (*Id.*).[14]

---

[13] Section 3115.48(A)(2) provides that a court may not modify a foreign support order unless the parties to the case – here, Guba and Ward – "have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order." O.R.C. § 3115.48(A)(2).

[14] Plaintiffs contend "they were never given notice of the defective order." (Doc. 46 at 3). It is unclear what they mean by the "defective order," but the only evidence they cite to support this contention is the Magistrate's order. Yet the order itself states that the court sent copies to Guba and Ward. (Doc. 45–8 at 2). Furthermore, Guba testified only that she did "not remember" receiving a notice stating that "if you failed to appear on September 23, 2009 the motion for modification . . . would be dismissed[.]" (Doc. 45–11 at 47). She never denied receiving that order, or any other order from the Huron County court. (*Id.* at 46) ("Q: Do you ever receive any notices or orders from the Huron County Court of Common Pleas?  A: Yes."); (*id.* at 51–52) (the only order Guba specifically

Judge Conway entered an order confirming that decision on September 28, 2009. (Doc. 46–8).

Despite this dismissal order, Guba continued to receive support payments from Ward via the Agency.

From January 1, 2009 through September 30, 2009, the Agency collected $6,003 from Ward and disbursed those funds to Guba. (Doc. 45–13 at 32–35). And from October 1 – three days after the dismissal entry – through December 31, the Agency collected $3,360 from Ward and remitted that amount to Guba. (*Id.* at 36–37).

Guba also received occasional cash payments directly from Ward. She testified Ward would pay her in cash each week that he was working, and that these payments amounted to some $10,000. (Doc. 45–11 at 49–50).

## B. Guba's Dealings with the Agency: September, 2009 and Beyond

On September 30, 2009, Agency Investigator Rader received a phone call from Guba about a court order dismissing her case. (Doc. 45–10 at 133). Although Guba recalled talking to Rader "[n]umerous times," she had no recollection, at her deposition, of this phone call. (Doc. 45–11 at 48).

After taking the call, Rader sent Guba a letter containing a "timeline of the most recent request for review/modification" of the child-support order. (Doc. 45–9 at 1). The letter recounted

---

remembered receiving was an order saying "my case was dismissed"). Ward's testimony was to the same effect. (Doc. 45–12 at 36) ("I remember getting a bunch of different paperwork from the Common Pleas Court and from child support, but I don't remember what any of them said specifically.").

8

the events that had transpired in the Common Pleas Court since Ward's request, in early 2008, to reduce his support obligation. (*Id.*).[15]

According to the Agency's "Running Minutes" – the Agency's internal record of Guba's child-support case, its contacts with Guba and Ward, and the relevant developments in the Common Pleas Court – Guba did not contact the Agency again until June, 2010. (Doc. 45–10 at 135).

On June 21, Guba told Agency personnel she planned to visit the Agency and waive the arrears that had accrued on Ward's account. Guba wanted this waiver, she explained, because Ward "gave her some money personally." (*Id.*). When Guba visited the Agency on June 30, however, Agency personnel declined to help her execute the waiver. (*Id.* at 137). Instead, a staff member told Guba "to contact her case worker in Michigan" because the matter was outside Huron County's jurisdiction. (*Id.*).

According to the Running Minutes, Guba next contacted the Agency in November, 2010 and requested a "payment history for the last 12 months." (*Id.* at 140). In mid-November, Guba and the Agency had frequent contact about Guba's executing a waiver of Ward's arrearage. (*Id.* at 142–44). Guba met with Carman on December 3 to discuss the matter, but Guba did not execute the waiver that day. (*Id.* at 147).[16]

As Guba and the Agency tried to sort out the arrearage issue, Guba continued receiving child-support payments from Ward, via the Agency, during the first two-thirds of 2010.

---

[15] Guba denied receiving this letter. (Doc. 45–11 at 48).

[16] Guba contacted the Agency by telephone a handful of times in 2011, but the Running Minutes reflect that none of her inquiries concerned: 1) child-support payments Ward had or had not made; 2) her non-receipt of any such payments; or 3) what steps, if any, she needed to take to ensure proper registration of the support order. (Doc. 45–10 at 148, 149, 150, 151, 152, 154) (documenting phone calls Guba made to the Agency in 2011 asking about "tax offset information").

The Agency's records reflect that, from January 1 through August 31, the Agency collected $4,800 from Ward and disbursed those funds to Guba. (Doc. 45–13 at 39–42). But the Agency collected no money from Ward, and remitted none to Guba, during the rest of 2010. (*Id.* at 42–44).

At his deposition, Ward testified that he was unemployed, and collected unemployment benefits, from August, 2008 until November, 2010. (Doc. 45–12 at 29). Ward did not remember making any cash payments to the Agency during that time:

> Q:    From the time you stopped working at J&E Roofing [in the summer of 2008, *id.* at 28–29], to the time you began working at Resstech [in November, 2010, *id.* at 29], were there – or did you make any individual payments or payments by you to Huron County?
>
> A:    I thought I had, but I'm not sure. I cannot verify that 100 percent that I've made any payments.
>
> Q:    If you had made a payment would you have gotten a receipt?
>
> A:    Yes. Usually when I would come out there and give a cash payment they would give me a receipt.
>
> Q:    But you can't remember during, between August of 2008 and November of 2010 making any payments?
>
> A:    I can't remember if I did or not, it's awhile back. I'm saying I've been paying for close to 17 years, so it's hard to remember, you know, how much and when.

(*Id.* at 30).

### C. The 2012 Registration Effort

In December, 2011, Huron County notified Ward that, due to his failure to pay child support, his driver's license was subject to suspension. (Doc. 45–10 at 154).[17] This prompted Guba to call the

---

[17] As of December 31, 2011, Ward owed $24,008.14 in unpaid child support. (Doc. 45–13 at 48). The Agency's records reflect that it collected no money from Ward, and disbursed no money to Guba, in 2011. (*Id.* at 45–49).

Agency and ask that it not suspend Ward's license. She explained that Ward had been "paying her directly," and that she wanted to "waive arrears." (*Id.* at 155).

Although Agency personnel initially told Guba it would send her the necessary paperwork, Carman intervened and told a staff member not to send Guba the paperwork. (*Id.* at 155–56). Instead, Carman advised that she would "prepare the paperwork" personally. (*Id.*). Between January and late February, 2012, the Agency left three messages for Guba about paperwork that she and Ward needed to sign if they wished to waive arrears. (*Id.* at 157–58).

On April 19, Carman filed another Petition for Registration of Foreign Support Order. (Doc. 20–17 at 3; Doc. 45–10 at 159).[18]

Before she did so, however, Guba and Ward each executed, apparently at Carman's direction, affidavits that Carman then attached to the registration petition. Ward executed his affidavit on March 23, 2012. (Doc. 45–15). In it, he "consent[ed] to Huron County, Ohio registering the child support order for enforcement and modification purposes." (*Id.* at 1). He also acknowledged that:

- "[I]f I do not sign this affidavit . . . this child support case may be forwarded to the originating state of Michigan in order for that state to start and complete the waiver of arrears process of my child support case."

- "I am signing this affidavit, under oath and under penalty of perjury, knowingly and voluntarily, and <u>NOT</u> in response to any threats, duress or coercion by any other person(s) and <u>NOT</u> as part of any agreement with any other person(s) to refrain from taking action which the other person(s) may be able to take under the law[.]"

(*Id.* at 2).

---

[18] A copy of this petition does not appear in the record. However, the record shows that the Common Pleas Court filed it under a new case number, *Guba v. Ward*, Case No. DR 2012 0343. (Doc. 20–17 at ¶7).

On April 5, 2012, Guba executed an identical affidavit as well as a waiver of $17,000 in arrears that Ward owed her. (Doc. 45–16; Doc. 45–14 at 1).[19] The same day, Guba and Ward executed another waiver, this one styled "Waiver of Service of Petition for Registration of Foreign Support Order, for Modification and Controlling Order And Continuing, Exclusive Jurisdiction Granting." (Doc. 46–11).

In this waiver, Guba and Ward acknowledged that they:

- Received a copy of "the Petition for Registration of Foreign Support Order, for Modification and Controlling Order And Continuing, Exclusive Jurisdiction." (*Id.* at ¶1).

- Knowingly and voluntarily waived service of process of the Petition and signed the affidavits discussed above, *supra*, p. 11–12, which they intended to "serve as [their] written consent for this state to modify and enforce the support order[.]" (*Id.* at ¶¶2, 3).

- Understood Guba had "submitted a request to waive arrears owed to her" and wanted the request to be "granted and ordered as soon as the Petition is registered and when [the Agency] submits said Judgment Entry to the Court for signature and filing." (*Id.* at ¶¶5, 6).

These affidavits appeared to provide some of the information that the court, per O.R.C. §§ 3115.39 and 3115.48, needed to register the Michigan support order for modification purposes. But the waiver also contained the following language, the relevance of which to the registration efforts is not apparent:

We [Guba and Ward] each understand that there were or may have been errors and/or defects in Huron County CSEA processing Dawn Henneman nee Guba's 2006 request for a review and for registration of this order for enforcement and modification in this state. Therefore, we each voluntarily and knowingly waive any and all errors and/or defects as a result of [the Agency] processing Ms. Henneman nka Guba's 2006 request as submitted[.]

---

[19] It does not appear that the Agency ever submitted the waiver of arrears to the Common Pleas Court.

(*Id.* at ¶7).[20]

Magistrate Sales conducted an initial review of the petition on June 4, 2012 and found that it did not comply with O.R.C. § 3115.39(A)(2) because it did not include "certified copies of relevant support orders together with modifications thereto." (Doc. 46–12 at 2). The Magistrate ordered that, "unless CSEA complies with the provisions of R.C. 3115.39(A)(2) within thirty (30) days of the date of this order, the Petition . . . shall be dismissed without further notice or hearing." (*Id.*).[21]

Nevertheless, Carman filed an amended registration petition that omitted the certified order. Instead, she explained in the petition that the certified order was already in the court's case file (under the 2006 case number), and that the order "hereby is incorporation [*sic*] by reference[ ]" into the amended petition. (Doc. 45–17 at 1).

On July 30, 2012, the Common Pleas Court dismissed the petition.[22] (Doc. 20–17 at ¶9).

––––––––––––––––––––––

[20] Plaintiffs alleged that defendants "advised Guba and Ward that if they did not disclaim those errors and defects, their current request for child support would be denied and services would not be rendered to the parties . . . These deceitful and manipulative practices on the part of the above-named defendants were an obvious attempt to thwart and cover-up their prior wrongdoings and inactions." (Doc. 13 at ¶¶54, 56). Defendants contend, without citation to fact or law, that this waiver was "for the benefit of the Huron County Court of Common Pleas and in interest of furthering the attempted registration of the child support order in 2012." (Doc. 47 at 14). The Sixth Circuit, however, characterized this alleged conduct as a "discrete wrongful act that constitutes a *separate* due-process violation[.]" *Guba*, *supra*, 600 F. App'x at 380 (emphasis in original).

[21] Magistrate Sales's order and the court's docket reflect that the court sent notice of the decision to Guba and Ward. (Doc. 46–12 at 2; Doc. 47–2 at 1).

[22] Neither party made this decision part of the record. However, the Agency's Running Minutes reflect that the court dismissed the petition because "*Huron Co. CSEA fails to comply with RC 3115.39(A)(2) regarding requirements to submit with petition.*" (Doc. 45–10 at 160) (emphasis added). Contrary to defendants' representations that Guba and Ward are solely to blame for the failed registration efforts, this order puts the blame directly at the Agency's and Carman's doorstep.

13

On August 20, the Agency notified the Ingham County, Michigan "Friend of the Court," an agency that helps process and enforce child-support orders, that the Huron County Common Pleas Court had "dismissed all actions on this case." (Doc. 46–13 at 2). The Agency also asked the Friend of the Court to "please enforce this case." (*Id.*).[23] Ingham County immediately responded that it had closed Ward and Guba's case long ago, after learning that Huron County "had registered the case." (Doc. 46–15 at 2).

Also on August 20, the Agency closed its internal case file without first notifying Guba or Ward that it was doing so. (Doc. 45–10 at 163; Doc. 46–20 at 37–39).

Rader, who sent the correspondence to Ingham County and initiated the internal case closure, admitted that she was trying to "pass[ ] the buck back to Michigan because this [order] couldn't get entered properly." (Doc. 46–20 at 37).

Plaintiffs contend that, "[a]t this point, defendants refused to take any calls or communications from Plaintiffs whatsoever, all the while failing to inform Plaintiffs of the issues surrounding the foreign support order." (Doc. 46 at 5).[24]

---

[23] In the same vein, Carman gave instructions to Agency personnel "to contact [Guba and Ward] and advise them that they will need to contact Michigan to address all of the issues[.]" (Doc. 45–10 at 161).

[24] Plaintiffs' opposition brief cites no evidence to support these contentions. (Doc. 46 at 5). Their related assertion (*id.* at 8) that defendants "failed to provide case notes relative to Plaintiff's [*sic*] matter and/or any contact with Ms. Guba from 2008 thru 2010, even though defendants allegedly attempted to make contact with Plaintiffs for entry of the foreign support order, requesting Plaintiff's [*sic*] income information" is inaccurate: defendants have provided one-hundred and seventy-two pages of such records in the form of the Running Minutes. Finally, those records reflect that the Agency contacted Guba on August 8, 2012 and advised her of the need to seek recourse in Michigan. (Doc. 45–10 at 162). Thereafter, Guba contacted the Agency sometime before August 20 about the court's dismissal entry of July 30. (*Id.*). The Agency also left several messages for Guba in late 2012. (*Id.* at 169, 170).

14

### D. The 2013 Registration Effort

Frustrated with the Agency's inability to register the support order correctly, Guba and Ward lodged a complaint, in February, 2013, with the Ohio Attorney General's Office and the Ohio Department of Jobs and Family Services. The upshot of this process was that the Agency agreed to obtain "an original copy of the order from Michigan and file for a Foreign Support Order" in the Huron County Court of Common Pleas. (Doc. 46–16 at 2).

On June 4, 2013, the Agency, through Carman, filed another petition to register the Michigan support order in Huron County. (Doc. 46–17). Once again, however, the Huron County Common Pleas Court denied the petition.[25]

### E. Litigation

Plaintiffs brought this § 1983 suit against defendants Huron County, the Huron County Department of Job and Family Services, the Agency, Carman, Lenora Minor, and Jill Nolan. As is relevant here, they alleged "that Defendants, in taking child-support payments from Ward and failing or refusing to submit them to Guba, have violated both Guba's and Ward's rights under the Due

---

[25] Because the parties did not make this decision part of the record, the basis of the denial is unclear. According to defendants, Guba and Ward "admit that the petition was denied . . . because the necessary evidence of Guba and Ward's income for child support calculation purposes was not provided by them to the Huron Court." (Doc. 45 at 10). The only evidence defendants cite is the brief Guba and Ward filed in their earlier appeal to the Sixth Circuit. But the cited pages of that brief contain no such admission; rather, they fault the Agency for "fail[ing] to file necessary attachments" to the most recent petition. (Doc. 45–20 at 16–17). Guba and Ward insist that "defendants [*sic*] repeated failure to attach the necessary documents, and/or any pertinent documentation whatsover," prompted the dismissal. (Doc. 46 at 6). Like defendants, however, plaintiffs cite no evidence to support their contention.

15

Process Clause of the Fourteenth Amendment." *Guba*, *supra*, 600 F. App'x at 379; (Doc. 13 at ¶¶68–71).[26]

Magistrate Judge Armstrong, presiding with the consent of the parties, dismissed the complaint for failure to state a claim. *Guba v. Huron Cnty.*, 2013 WL 6578911 (N.D. Ohio). The Magistrate Judge did not reach the merits of the due-process claim, finding instead that the claim was untimely. *Id.*, at *4–7.

The Sixth Circuit reversed. *Guba*, *supra*, 600 F. App'x 374.[27]

After concluding that the due-process claim was timely, the court held that it was also plausible.

It found that, as a matter of Ohio law, Guba had a protected property interest in receiving the support payments Ward made to the Agency, and Ward had a protected property interest in expecting that Guba would receive the payments he made to the Agency:

> Plaintiffs further allege that the Michigan order was transferred to the Huron County, Ohio, Common Pleas Court, that the order was then modified, apparently pursuant to Ohio law, and that for some period of time, Ward made and Guba received child-support payments through the Huron County Child Support Agency. The relevant Ohio law provides:
>
>> On issuing or modifying a support order, issuing any withholding or deduction notice described in section 3121.03 of the Revised Code, or issuing an order described in division (C) or (D) of that section, the court or child support enforcement agency shall require that support payments be made to the office of child support in the department of job and family services as trustee for remittance to *the person entitled*

---

[26] Guba and Ward also alleged that the county defendants, by their failure to train Carman and other personnel, were liable for its employees' and agents' misconduct under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Doc. 13 at ¶¶75–81).

[27] Plaintiffs' complaint raised other claims that Magistrate Judge Armstrong also dismissed, but the Circuit affirmed as to those claims. *Guba*, *supra*, 600 F. App'x at 385–86.

*to receive payments*, except as otherwise provided in sections 2151.49, 3113.07, and 3125.27 to 3125.30 of the Revised Code.

Ohio Rev. Code § 3121.44 (emphasis added). The Ohio Revised Code further defines § 3121.44's "person entitled to receive payments" as the person listed as entitled to receive payments in an Ohio court order for child support. *See id.* § 3119.01(B)(3).

Ohio law thus establishes that when a child-support order is entered, the named recipient is entitled to it. Guba therefore has a cognizable property interest in these payments. And Ohio law also establishes that the individual making those payments through the Child Support Agency has a right to expect that those monies will be remitted to the person entitled to receive them, an interest sufficient to qualify as the payor's—here Ward's—property interest in the monies.

*Id.* at 381–82 (internal emphasis in original).

The Sixth Circuit then held that plaintiffs adequately alleged a deprivation of those property interests. "Due to the alleged wrongful conduct of Defendants," the court explained, "Ward's child-support payments to the CSEA have not been forwarded to Guba for more than five years." *Id.* at 380.

Finally, the court held that Guba and Ward plausibly alleged that defendants did not give them notice that they had failed to register the support order correctly:

The Supreme Court has drawn a clear line: "where the [government] cannot predict and guard in advance against a deprivation, a postdeprivation tort remedy is all the process the [government] can be expected to provide." But under the facts alleged in this complaint, this is not a situation that the county government could not have predicted or a deprivation that the government could not have guarded against in advance. Taking the facts in the amended complaint as true, Plaintiffs were illegally deprived of property as a direct result of county personnel's deliberate actions "at a specific, predictable point."

Further, Plaintiffs allege that they were given no notice of the failures of county personnel to register their original foreign support order, or notice of subsequent proceedings related to that support order. Ohio Rev. Code § 3119.93 provides:

The termination of a child support order by a court or agency also terminates any applicable withholding or deduction notice or other

17

order issued under section 3121.03 of the Revised Code. With respect to a court child support order, on the termination of any withholding or deduction notice, the court immediately shall notify the appropriate child support enforcement agency that the order or notice has been terminated. If a withholding notice or order is terminated, the agency immediately shall notify each payor or financial institution required to withhold or deduct a sum of money for the payment of support under the order or notice that it has been terminated and that the payor or institution is required to cease all withholding or deduction under the order or notice.

Additionally, Ohio Rev. Code § 3115.18(B)(4) provides that a support enforcement agency must, "[w]ithin two days ... after receipt of a written notice from a tribunal pursuant to sections 3115.01 to 3115.59 of the Revised Code, send a copy of the notice to the plaintiff." These statutes required Huron County and its child support agencies to notify Plaintiffs of the county's repeated botched attempts to register Plaintiffs' foreign support order and the court's decision that it would no longer enforce that order. But the Plaintiffs allege that CSEA not only failed to notify them of any such errors, the agency also refused to take Plaintiffs' calls and answer their questions regarding the sudden cessation of child-support payments to Guba.

Finally, CSEA has not alleged any "government interest" that would prevent the agency from abiding by the Ohio Revised Code or communicating with Plaintiffs properly. Nor has CSEA alleged any such interest that would obviate its obligation to do so. In short, Plaintiffs have pleaded facts that, if proven, would demonstrate that they were denied any opportunity to get the foreign support order properly registered with the Huron County Common Pleas Court, or to prevent that court from dismissing their case for the county employees' failure to comply with the court's orders relative to proper filing of that order.

*Id.* at 383–84 (internal footnote and some internal citations omitted).

### Standard of Review

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323. Once the movant meets that burden, the "burden shifts to the nonmoving party [to] set forth specific

18

facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit

admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman*

*Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**Discussion**

**A. Procedural-Due-Process Framework**

The Sixth Circuit's decision sets out the law governing Guba and Ward's procedural-due-

process claim:

> We apply a three-step approach here. First, is there a legally protected property
> interest? If so, then second, were Plaintiffs deprived of that property? And if so, then
> third:
>
>> In situations where the government feasibly can provide a
>> predeprivation hearing before taking property, it generally must do so
>> regardless of the adequacy of a postdeprivation tort remedy to
>> compensate for the taking. Conversely, in situations where a
>> predeprivation hearing is unduly burdensome in proportion to the
>> liberty at stake, or where the government is truly unable to anticipate
>> and prevent a random deprivation of a liberty interest, postdeprivation
>> remedies might satisfy due process.

*Guba*, *supra*, 600 F. App'x at 383 (internal citations and brackets omitted).

The Circuit determined that Guba had "a cognizable property interest" in receiving child-

support payments that Ward made to the Agency. *Id.* at 382. It also held that Ward had a protected

property interest in "expect[ing] that those monies [he paid into the Agency] will be remitted to

[Guba]." *Id.*

19

Accordingly, whether summary judgment is proper depends on whether a reasonable jury could find that: 1) defendants' misconduct deprived Guba of money that Ward paid into the Agency, and thus deprived Ward of his right to expect that the Agency would disburse that money to Guba; and 2) if so, defendants failed to notify Guba and Ward of the ongoing problems with the registration, thereby denying them an opportunity to rectify the situation.

### B. Deprivation

Defendants contend that no reasonable jury could find that they deprived Guba and Ward of the property interests the Sixth Circuit identified. (Doc. 45 at 17–19; Doc. 47 at 3–4, 5–7). This is so, the defense maintains, because there is no evidence that Ward made a payment to the Agency that Guba did not receive.

Defendants rely on the Payment History Report for Guba and Ward's case.

As noted above, these records show that:

- From January 1, 2008 through December 31, 2008, the Agency collected $4,313.47 from Ward and remitted $4,313.47 to Guba. (Doc. 45–13 at 30–31).

- From January 1, 2009 through December 31, 2009, the Agency collected $9,363 from Ward and remitted $9,363 to Guba. (*Id.* at 38).

- From January 1, 2010 through August 31, 2010, the Agency collected $4,800 from Ward and remitted $4,800 to Guba. (*Id.* at 42, 43–44).

- From September 1, 2010 through February 28, 2013, the Agency collected $0 from Ward and remitted $0 to Guba. (*Id.* at 49, 54, 55–56).

Guba and Ward argue that this evidence is insufficient to warrant summary judgment.

First, they contend that the Payment History Report is "erroneous." (Doc. 46 at 15).

Yet they offer explanation or argument – let alone evidence – to support that conclusion. This kind of unsupported assertion in an opposition brief does not show there is a genuine dispute for

trial. *Strehlke v. Grosse Point Pub. Sch. Sys.*, --- F. App'x ----, 2016 WL 3595724, *3 (6th Cir.) ("A party opposing a properly supported summary judgment motion may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.") (internal quotation marks omitted).

Second, "[i]t is Plaintiffs [*sic*] contention that when Plaintiff Ward was unemployed, all payments were made [in person] at the child support agency via cash, said payments never being received by Plaintiff Guba." (Doc. 46 at 15).

But plaintiffs have cited no evidence from which a reasonable jury could find that this was so. *E.g.*, Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record"). Moreover, Ward testified that he did not remember making any cash payments while he was unemployed:

> Q: From the time you stopped working at J&E Roofing, to the time you began working at Resstech, were there – or did you make any individual payments or payments by you to Huron County?
>
> A: I thought I had, but I'm not sure. I cannot verify that 100 percent that I've made any payments.
>
> Q: If you had made a payment would you have gotten a receipt?
>
> A: Yes. Usually when I would come out there and give a cash payment they would give me a receipt.
>
> Q: But you can't remember during, between August of 2008 and November of 2010 making any payments?
>
> A: I can't remember if I did or not, it's awhile back. I'm saying I've been paying for close to 17 years, so it's hard to remember, you know, how much and when.

(*Id.* at 30).[28]

This testimony does not create a genuine factual dispute as to whether the Agency deprived Guba of her interest in receiving, and Ward of his interest in having Guba receive, child-support payments he made to the Agency. *See Millsap v. CCB Credit Servs., Inc.*, 2008 WL 8511691, *9 (E.D. Mich.) (if non-movant offers deposition testimony to defeat summary judgment, testimony must "rest upon the deponent's personal knowledge, and testimony about matters that the deponent 'cannot remember' does not suffice to withstand an award of summary judgment.").

Third, plaintiffs contend that Guba "advised defendant Rader that Ward had been making payments into the child support system, yet she had not been receiving same." (Doc. 46 at 14).

Rader (who is not a defendant) testified that she recalled Ward telling her "that he did make payments, yet, Dawn was not receiving them." (Doc. 46–20 at 46). But whatever statement Ward made to Rader during this conversation – a statement that conflicts, moreover, with Ward's own testimony[29] – is inadmissible hearsay, given that plaintiffs offer it to prove the truth of Ward's out-of-

---

[28] And though, as already noted, Ward testified he did make cash payments in 2007, plaintiffs have not alleged the Agency failed to remit those payments to Guba. *Guba*, *supra*, 600 F. App'x at 377; (Doc. 13 at ¶¶23–27).

[29] Ward never testified that he made a cash payment that Guba did not receive. In fact, he testified to just the opposite:

"Q:  Do you have any reason to doubt that Ms. Guba, any reason to suspect that Ms. Guba did not receive those payments during that time?

A:  Well, there was a couple a times I would come in there and make a payment and then she'd call me, like, a week later and asked me, you know, she's be like you know, 'Well, where's my money, I thought you made a payment?' And I was like, 'I absolutely went up there and made a payment.' And then she would call up and they'd say something or another happened and then it would be delayed and *she'd get the money, like, a month later, you know.*"

court statement.[30] *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) ("Hearsay evidence . . . must be disregarded" at summary-judgment stage); *see also* Fed. R. Evid. 801(c); *Cole v. Tennessee Watercraft, Inc.*, 2008 WL 2783520, *6–7 (E.D. Tenn.) (the plaintiff's statements to witnesses about past events, which the witnesses recounted at their depositions, were inadmissible hearsay where plaintiff offered them to prove that events had transpired in the manner she alleged).

Even if the testimony were admissible, however, it would not create a genuine factual dispute.

The question put to Rader – and hence Rader's testimony about what Ward told her – was vague. In questioning Rader, counsel did not specify a time frame when Ward allegedly made payments that Guba did not receive. (Doc. 46–20 at 46). Only by speculating, then, could a jury conclude that Ward made a cash payment to the Agency at a time when the Agency remitted no payments to Guba.[31] *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (nonmovant must

---

(Doc. 45–12 at 20) (emphasis added).

[30] It appears that Rader's testimony actually contains two hearsay statements: 1) Ward's statement that he made cash payments; and 2) Guba's statement to Ward (which Ward relayed to Rader) that she did not receive those payments (elsewise how would Ward know that Guba had not received those payments?). For what it's worth, I note that Guba was unable to identify, at her deposition, any payment Ward made that she did not receive. (Doc. 45–11 at 51, 58)

[31] As noted above, *supra*, p. 20, the Agency's Payment History Report reflects that the Agency remitted no child-support payments to Guba from September 1, 2010 through February 28, 2013. (Doc. 45–13 at 49, 54, 55–56). Had Ward testified, for example, that he made a cash payment during that time, summary judgment might have been inappropriate, as such testimony could have called the accuracy of the Agency's records into dispute. *Cf. Moran v. Al Basit LLC*, 788 F.3d 201, 205–06 (6th Cir. 2015) (plaintiff's testimony, standing alone, can defeat summary judgment). Ward gave no such testimony, however.

point to "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy").

Plaintiffs have acknowledged that their due-process claim depends on showing that Ward made one or more payments to the Agency, and that the Agency failed to remit that payment or payments to Guba. (Doc. 46 at 14) ("As Plaintiff Ward made payments into defendant County's child support system and Plaintiff Guba never received same, Plaintiff's [*sic*] Procedural Due Process claim must succeed [*sic*] summary judgment.").

But plaintiffs have introduced no evidence from which a jury could find that Ward made a payment that the Agency did not disburse to Guba. Accordingly, no reasonable jury could find that defendants' conduct, however lamentable and inexplicable their litany of errors might have been, deprived Guba and Ward of their protected property interests.

Defendants are therefore entitled to judgment as a matter of law on the procedural due-process claim and, perforce, plaintiffs' *Monell* claim.[32]

## Conclusion

It is, therefore

ORDERED THAT: defendants' motion for summary judgment (Doc. 45) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

---

[32] Given my ruling that there is no evidence on which a jury could find a property deprivation, I need not address whether defendants gave Guba and Ward adequate notice and an opportunity to be heard. Nor, in the absence of a basis on which a jury could find a constitutional violation, need I address defendants' qualified-immunity arguments. (Doc. 45 at 12–16).

24